ACCEPTED
06-15-00036-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
8/17/2015 5:50:27 PM
DEBBIE AUTREY
CLERK

## NO. 06 – 15 – 00036 – CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
8/18/2015 8:23:00 AM
DEBBIE AUTREY
Clerk

IN THE SIXTH DISTRICT COURT OF APPEALS
TEXARKANA, TEXAS

## QUINTON JACKSON

**Appellant,**

**v.**

## THE STATE OF TEXAS

**Appellee**

On appeal from the 124TH District Court, Gregg County, Texas
Trial Court Case No. 42,425-B

## BRIEF OF THE STATE OF TEXAS

## – ORAL ARGUMENT NOT REQUESTED –

CARL L. DORROUGH
Criminal District Attorney

Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
Gregg County, Texas
101 East Methvin St., Suite 333
Longview, Texas  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................1

INDEX OF AUTHORITIES.........................................................................2

STATEMENT OF FACTS............................................................................3

SUMMARY OF THE ARGUMENT ..........................................................6

ARGUMENT.................................................................................................7

   1)  The trial court did not err in assessing punishment without
        hearing further evidence on punishment. ......................................7

       A.   *Error was not preserved.*............................................................. 7

       B.   *The trial court did not abuse its discretion by failing to hold
           a separate punishment hearing after adjudicating Jackson's
           guilt, because Jackson had an opportunity to, and did,
           present evidence on punishment at the adjudication hearing.*..............11

PRAYER .......................................................................................................15

CERTIFICATE OF SERVICE ...................................................................15

CERTIFICATE OF COMPLIANCE .......................................................16

1

# INDEX OF AUTHORITIES

Cases

*Grammer v. State*,
    294 S.W.3d 182 (Tex. Crim. App. 2009) .........................................................11

*Issa v. State,*
    826 S.W.2d 159 (Tex. Crim. App. 1992) .......................................................7, 9

*Pearson v. State*,
    994 S.W.2d 176 (Tex. Crim. App. 1999) ......................................................9, 11

Rules

Tex. R. App. Proc. Rule 21.3 (a) and (h) ................................................................8

## STATEMENT OF FACTS

Appellant QUINTON JACKSON, was indicted in cause number 42,425-B for one count of intentionally and knowingly causing bodily injury to a child under 14 by forcing the child to and against the ground and by striking the child with his hand. See Indictment, CR 7-8, and Amended Indictment, CR 58-59. There were other counts, for assault of other family/household members, enhanced by prior conviction for assault, but those were abandoned when he pleaded guilty. CR 58-59. The conviction used for enhancement was for the misdemeanor of assaulting his grandfather, Clyde Cooks. Cause number 2010-1211. The guilty plea resulted in a deferred adjudication for only the assault on the child. See Order of Deferred Adjudication, CR 75. In October of 2014, the State moved to adjudicate Jackson for six alleged violations:

1) he intentionally and knowingly caused bodily injury to Clyde Cooks (over 65 years old) by striking him with a pan on July 18, 2014;

2) he intentionally and knowingly caused bodily injury to Clyde Cooks (over 65 years old) by pushing him to the floor;

3) he spent time with Lyanswer Pea, a person of disreputable or harmful character who smoked marijuana in his presence;

4) he was present on April 15, 2014, when Lyanswer Pea consumed marijuana;

5) he consumed marijuana on April 15, 2014; and

6) he consumed marijuana on June 23, 2014.
CR 87

3

Jackson pleaded "not true" to allegations 1, 2, and 3, and "true" to violations 4, 5, and 6, and after admonishments, the judge accepted those pleas. CR 90; 5 RR 7-10.  Testimony was taken as to allegations 1, 2, and 3, from all the persons at the scene,  or in the house on the day of the offense, including the defendant. 5 RR. Each attorney made a final argument. 5 RR 94-99.  Defense counsel argued for allegations 1,2, and 3 to be found not true, and for the violations 4, 5, and 6, to result in not prison, but in a modification of his probation terms. 5 RR 95-96.

In the part of the Reporter's Record labeled, "SENTENCING," The judge pronounced allegation 1 to be true, allegations 2 and 3 to be not true, and of course, he found allegations 4, 5, and 6 true. He gave a complete explanation of his reasoning for his findings on 1, 2, and 3. 5 RR 98-100.

Then he proceeded to the actual sentencing: "Having found that -- Allegation 1 true, and then Allegations 4, 5, and 6, I have to decide what to do with Mr. Jackson." 5 RR 100.  No objection was forthcoming from either side.

The judge then summarized Jackson's criminal history, and put on the record details from the offense report  (stipulated by Jackson and his attorney)  relating to the allegations abandoned by the State, details of the Christmas Day family altercation during which the child suffered a fractured skull, and three adult family members claimed to have assaulted by Jackson. 5 RR 10; SX 1 and SX 2.

The judge recalled that he would not have deferred the adjudication except for the fact that the mother of the injured child asked that the Court not incarcerate her brother. 5 RR 102. At that time he announced his decision to adjudicate him guilty and sentence him to ten years. 5 RR 102. After that he asked for and got a decision from Jackson about his desire to appeal, and then said, "If there's nothing further," before he adjourned the court. Nobody asked to put on any more evidence. 5 RR 102.

Jackson's appellate lawyer filed a motion for new trial, alleging the generic language, "[T]here has been material error committed that is calculated to injure the rights of Defendant," and "[B]oth the guilt innocence verdict and the punishment verdict are contrary to the law and the evidence on the case." CR 108. Nothing is mentioned in the motion for new trial that puts the trial court on notice that Jackson is demanding to put on evidence regarding his punishment.

## SUMMARY OF THE ARGUMENT

1)      Appellant did not preserve error on the trial court's decision to assess punishment soon after he announced his decision to adjudicate.

2)      The trial court did not err in assessing punishment soon after he announced his decision to adjudicate because he had already heard the evidence from the defendant's relatives and the defendant request continued probation rather than prison time.

1) **The trial court did not err in assessing punishment without hearing further evidence on punishment.**

   **A. Error was not preserved.**

   Rule 33.1 (a) requires a claimed error to be preserved by contemporaneous objection or in a motion for new trial, with the exact claim specifically pointed out to the judge in time for a judge to correct the error. TX R App. Proc. Rule 33.1 (a) Vernon, 2013.

   Appellant cites *Issa v. State* for the proposition that his claim of error could be raised for the first time on appeal despite the lack of a timely objection. The majority in *Issa* agreed that the issue of the lack of a separate punishment phase was error, and that it could be raised for the first time in a motion for new trial.

   But Justice Overstreet dissented, pointing out that the error had not been preserved. *Issa v. State*, 826 S.W.2d 159, 161-162 (Tex. Crim. App. 1992). The defendant in *Issa,* 826 S.W.2d 159 filed a timely motion for new trial, raising the issue of the court's failure to allow evidence on punishment. *Issa,* 826 S.W.2d 159. Judge Overstreet agreed that a trial court must hold a second phase for presenting evidence after adjudicating guilty, but disagreed that Issa had preserved error. *Issa,* 826 S.W.2d at 162. Judge Overstreet opined that even Issa's motion for new trial

was too late to raise the issue; he should have raised it at trial and asked for the opportunity to present evidence that day.

This case is different from *Issa* in that the motion for new trial filed for Quinton Jackson does not raise the issue with any specificity. The two generic grounds mentioned in Jackson's motion for new trial are two suggested by the statute:

> 1) ". . . [T]here has been material error committed that is calculated to injure the rights of Defendant."
> 2) " . . . [B]oth the guilt/innocence verdict and the punishment verdict are contrary to the law and the evidence in this case."

Jackson's Motion for New Trial, CR 68; See Tex. R. App. Proc. Rule 21.3 (a) and (h) Vernon, 2013. Neither of these is specific enough to call the Court's attention to the allegation made in Appellant's brief.

In addition, the record does not show that Appellant presented his motion for new trial to the trial court nor does it show that he requested a hearing on the motion for new trial. On appeal, he does not complain that his motion for new trial was denied, only that the court erred in failing to hold separate hearings on adjudication and punishment.

Another way this case is different from *Issa* is that Issa's attorney raised the issue twice during the trial, but was twice denied the opportunity to present evidence by the trial court. In Jackson's trial, Jackson was allowed

to testify as to his desire for continued probation, including additional terms of probation that he needed and would agree to.

Later Court of Appeals cases have distinguished *Issa*. *Pearson v. State*, 994 S.W.2d 176 (Tex. Crim. App. 1999). In *Pearson,* the Court of Criminal Appeals summarized the facts in the *Issa* case.

> In *Issa*, appellant moved to continue his probation, alleging insufficient evidence to revoke it. *Issa,* 826 S.W.2d at 160. The trial court denied the motion. *Id*. Appellant then responded, "Defendant rests," and arguments began. *Id*. In response to an objection by the state during appellant's argument, appellant asked to re-open and present testimony. *Id*. The trial court denied the request. *Id*. Appellant requested to proffer what the witness would testify to, but the trial court again denied the request, thereby denying appellant the opportunity to present evidence. *Id*. At the conclusion of appellant's argument, the trial court, in one proclamation, adjudicated appellant's guilt and sentenced him. 826 S.W.2d at 161. Appellant did not object to the trial court's action and claimed that the trial judge immediately left the bench without giving him the opportunity to make such objection. 826 S.W.2d at 160. We determined that appellant had no opportunity to object to the trial court's action until after that action had been taken. 826 S.W.2d at 161. Thus, appellant in *Issa* had neither the opportunity to present punishment evidence nor the opportunity to object to the trial court's action. We found that appellant preserved error for appellate review by raising his objection to the trial court's actions by timely filing a motion for new trial. *Id.*

*Pearson v. State* at 178. (footnotes omitted)

The *Pearson* court did not overturn *Issa*, but it did distinguish it, and limited its application to its specific set of facts. In *Pearson*, the defendant not only had the opportunity to put on evidence regarding punishment, but he did present evidence

regarding punishment. He testified in his own behalf, requesting that his probation be continued, even suggesting that it be extended "a couple of years." The *Pearson* court said "It is immaterial that the opportunity to present evidence came before the actual words of adjudication." As long as the defendant had an opportunity to present evidence during the proceedings, that is all that is required. Therefore, the trial court's judgment was affirmed in *Pearson,* even though there was no separate hearing on punishment.

Jackson's case is more like *Pearson* than *Issa.* Jackson's own testimony regarding his possible punishment and his willingness to have the terms of his probation modified to include more limitations sufficed to show that he had an opportunity to discuss his punishment before the adjudication decision was announced. In addition, the judge in Jackson's case prefaced the adjournment with "if there's nothing further," thus allowing either side to bring up any issue they wished. 5 RR 102. The defense responded with a statement that Jackson wanted to appeal. 5 RR 102. He could just as easily objected, at that time, to the fact that there had been no separate punishment phase. That was one opportunity he had to ask for the opportunity to bring more evidence. His motion for new trial was a second opportunity to ask to present more evidence. The likeliest reason Jackson did not ask the trial court to allow him to put on more evidence is that he had already put forth all he had.

For these reasons, Jackson's claim should be rejected as not having been preserved.

**B. The trial court did not abuse its discretion by failing to hold a separate punishment hearing after adjudicating Jackson's guilt, because Jackson had an opportunity to, and did, present evidence on punishment at the adjudication hearing.**

If Jackson's claim of error is considered, it should be rejected on the merits.

In addition to the *Pearson* case, above, this Court should consider a more recent case from the Court of Criminal Appeals, who granted discretionary review in *Grammer v. State*, 294 S.W.3d 182 (Tex. Crim. App. 2009). As in *Pearson,* the trial judge in *Grammer* adjudicated Grammer's guilt and immediately thereafter, announced his sentence. *Grammer v. State*, at 183. Because Grammer "had the opportunity to, and did, present punishment evidence at the adjudication hearing," his sentence was affirmed, at both appellate levels. The Court of Criminal Appeals held that "the court of appeals did not err to reject appellant's claim that the trial court abused its discretion in not holding 'a separate punishment hearing.'" *Grammer v. State* 294 at 192.

In the Jackson case, the following evidence was elicited before the judge announced his decision on adjudication:

Mr. Clyde Cooks testified that if Jackson were released, Cooks did not want Jackson back in his home, but other family members did. 5 RR 28-30, 33.

Ms. Bennie Cooks testified that Jackson was no trouble to her and helped out around the house. 5 RR 48-49.

The prosecutor asked Lyanswer Pea if she understood that Jackson, being on probation, could go to jail for smoking marijuana. 5 RR 77. She later said she had changed and he had, too. 5 RR 78.

Jackson was asked about his efforts to get a job, get on his feet, and be able to get his own place, allowing him to move out of his grandparents' home. 5 RR 83. Jackson explained he had smoked marijuana since his mother died, and admitted he had a problem with it, and was asking the judge for help with it, wanting "another chance". 5 RR 87-88. He testified that if the judge were to modify his probation and forbid him to go to his grandfather's house, he would abide by that condition. 5 RR 88. He testified do deal with his anger issues, that he was in church more. 5 RR 90.

At the close of the defendant's direct examination, this colloquy occurred, regarding the defendant's requests for consideration during punishment:

> Q. Is there anything else that you'd like to tell the Judge, before I pass you as a witness, that I didn't talk about?
> A. Just really, I wouldn't have took probation the first time if I didn't feel like I could handle it. And I know it's not going to come into play. I mean, I failed two drug tests, but I've passed two. And I'm trying to get myself together and get my life together. And this probation really

has been the thing to straighten me up. And I just want another opportunity. I don't want to be here.
Q. Do you think you can benefit from counseling for losing your mother?
A. Yes, sir.
Q. Do you think you could benefit from counseling for anger?
A. Yes, sir.
Q. Do you think you could benefit from counseling for [90] use of marijuana?
A. Yes, sir.
Q. Do you feel like those are things that you need?
A. Yes, sir.

Then the prosecutor asked him about the effect of his mother's death, about his anger issues and the steps he had taken to resolve those, and they talked about his ability to tell his probation officer about the mistakes he's made on probation. 5 RR 90-92.

Thus, Clyde Cooks' testimony concerned the terms of probation he and the other family members wanted the judge to consider; Bennie Cooks told the judge that Jackson was no trouble, and that he helped out; Pea's testimony concerned the mitigating factor of change; and Jackson's own testimony covered mitigation (effect of mother's death), how he would benefit from counseling resolve anger issues, how he was willing to avoid contact with his grandfather, and how the judge could modify his probation terms and allow him to remain out of prison. All of these concern disposition factors, not just whether he should be adjudicated.

In the defense attorney's closing statement, he began by requesting modified probation terms and no incarceration.

13

My client has stated that he does have an issue with marijuana, and I think it's pretty evident that he does. He had some -- had some issues growing up based on the fact of having lost his mother at 13. I don't think he's ever gotten any counseling for that. I think that's something that he could benefit from, as well as some anger management classes. And certainly a condition that he not go back to that residence or have contact with his grandfather, I think would resolve the issues that we have here at the grandparents' home.

5 RR 96. And he concluded his argument: "So we'd ask the Court to find the new offense "not true," modify the probation to whatever the Court deems fit. We would just ask that he not be revoked and sent to prison." 5 RR 98.

In his closing statement, the prosecutor made no request for a specific number of years, arguing only for revocation. 5 RR 98-99.

While there was no separate hearing on punishment, there was evidence introduced regarding disposition, and the defense did make arguments for continued probation before the judge ruled on the adjudication motion. The prosecution did not ask to put on evidence for any particular disposition, but that could not be said to have harmed the defendant.

Pursuant to the Court of Criminal Appeals' opinions in *Pearson* and *Grammer*, this trial court's judgment was not an abuse of discretion because Jackson had the opportunity to, and did, present evidence during the adjudication phase that he would have presented during a punishment phase if one had been held. It does not matter when the evidence came in, as long as he was not prevented from presenting

it. Jackson's sole issue should be rejected and the conviction and sentence affirmed.

## PRAYER

The State prays for affirmation.

Respectfully Submitted,


/s/**Zan Colson Brown**
Zan Colson Brown
Texas Bar No. 03205900
Assistant Criminal District Attorney
101 East Methvin St., Suite 333
Longview, TX  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701
EMAIL: zan.brown@co.gregg.tx.us


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record by efiling to

Clement Dunn
140 East Tyler, Suite 240
Longview, TX 75601


this 17th day of August, 2015.

/s/ **Zan Colson Brown**_____
Zan Colson Brown
Assistant Criminal District Attorney

## CERTIFICATE OF COMPLIANCE

I certify that the **BRIEF OF THE STATE OF TEXAS,** exclusive of the following: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, contains 2,828 words, according to Word software.

**/s/_Zan Colson Brown**
Zan Colson Brown
Assistant Criminal District Attorney